UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BENNY DANIELS, A/K/A
BENNIE DANIELS,

    Petitioner,

-vs-                                    Case No. 8:03-CV-1701-T-27MSS

JAMES McDONOUGH,[1]

    Respondent.
_____/

## ORDER

Petitioner, a State of Florida inmate, initiated this proceeding *pro se* by filing a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his 2000 conviction entered by the Tenth Judicial Circuit Court, Polk County, Florida (Dkt. 1). Respondent has filed a response to the petition (Dkt. 5), and Petitioner has filed a reply thereto (Dkt. 6). This matter is now before the Court for consideration of the merits of the petition.

### Background

Petitioner was charged by Information on December 9, 1998 with arson of a vehicle (Dkt. 5, Ex. 006 at R. 37-38). The events giving rise to the charge occurred on November 16, 1998, during an altercation between Petitioner and his girlfriend. *Id.* at 79. On February 19, 1999, the State filed a Notice of Intent advising the trial court that Petitioner qualified for sentencing under the Prisoner Releasee Reoffender Punishment Act, Fla. Stat. 785.082

---

[1] James McDonough, Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, Jr., pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

(1998) ("PRRPA")[2] (Dkt. 5, Ex. 001, Vol. 1 at 6). Represented by court-appointed counsel, Petitioner proceeded to a trial by jury on October 4, 1999. He was found guilty as charged, and on February 3, 2000, Petitioner was sentenced as a prison releasee reoffender to a term of 15 years (Dkt. 5, Ex. 001, Vol. I at R. 26-30). The conviction and sentence were affirmed on direct appeal on November 1, 2000 (Dkt. 5, Ex. 005).

Petitioner filed an application for state post-conviction relief pursuant to Fla. R. Crim. P. 3.850 on February 22, 2001, asserting six claims of ineffective assistance of counsel (Dkt. 5, Ex. 006 at R. 55). Following an evidentiary hearing, the trial court denied the Rule 3.850 motion on November 14, 2001 (Dkt. 5, Ex. 006 at R. 219). The state district court affirmed the trial court's decision in a per curiam decision entered on March 14, 2003. *See Daniels v. State*, 847 So.2d 466 (Fla. 2d DCA 2003).

On August 8, 2003, Petitioner filed a petition for federal habeas relief asserting that (1) "the conviction was obtained by erroneous admission of evidence, where the victim made a remark before the jury implying the Petitioner had a pending case for an unrelated, unproven offense;" and (2) trial counsel "was ineffective in failing to inquire about or develop the testimony of witnesses who could have testified on behalf of the Petitioner, which would have affected the outcome of Petitioner's trial" (Dkt. 1). Respondent argues that Petitioner has failed to establish that he meets the criteria for relief § 2254(d)-(e).

---

[2] The PRRPA provides that defendants who commit certain enumerated crimes within three years of being released from a state prison are subject to certain enhanced sentences. *See* Fla. Stat. § 785.082 (1998). Following a burglary conviction in Polk County, Florida, Petitioner was sentenced as an habitual offender on September 19, 1990 to serve a 10-year term of imprisonment in Case No. 90-02060. Petitioner was placed in the custody of the Florida Department of Corrections on September 19, 1990, where he remained until his release on June 5, 1997. *See* Dkt. 5, Ex. 001, Vol. I at R. 12-13. The arson that is the subject of the instant petition occurred on November 16, 1998. *Id.* at R. 1. Under the PRRPA, Petitioner's offense of conviction in the present case, a second degree felony, was punishable by 15 years imprisonment. *See* Fla. Stat. § 785.082(3)(d). Under Florida law, "[w]hen a defendant meets the requirements for sentencing under the PRRPA, a trial court may not sentence the defendant under another sentencing statute where the sentence under the other statute is equal to or lesser than that imposed under the PRRPA." *Helms v. State*, 890 So.2d 1256, 1257 (Fla. 2d DCA 2005) (quoting *Hill v. State*, 862 So.2d 815, 815 (Fla. 4th DCA 2003).

Having reviewed the record, the parties' arguments, applicable statutes and controlling case law, this Court agrees.

## Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dep't of Corrs.*, 278 F.3d 1245, 1255 (11th Cir. 2002). Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the

-3-

presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

## Discussion

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof. Because a state court initially considered the issues raised in the petition, § 2254(d) governs the review of Petitioner's claim. *See Mobley v. Head,* 267 F.3d 1312, 1316 (11th Cir. 2001).

## GROUND ONE

In his first claim for relief, Petitioner asserts that the trial court erred in denying his motion for a mistrial on the ground that a remark made by the victim in the jury's presence "implied" that he "had a pending case for an unrelated, unproven offense" (Dkt. 1). The comment about which Petitioner complains was made while the victim was testifying about events that led to the offense of conviction:

Prosecutor: Did you guys exchange words?

Victim: I asked him what he was doing.

Prosecutor: What did he say?

Victim: He said, "If I can't ride in the car, won't nobody ride in the car."

Prosecutor: Had you talked about that earlier?

Victim: Well, there was a bunch of hassles about the car, but it all wound up at [sic] it was my car. And I was supposed to have taken him to pretrial, and it was too late. And I didn't have any gas in my car, so I went and got my hair done.

Dkt. 5, Ex. 001 at Tr. 136. Before the victim concluded her testimony, the trial court declared a recess. Trial counsel then moved for a mistrial, arguing that the victim's reference to Petitioner's "pretrial" status "tainted" the jury. The trial court denied trial

-4-

counsel's motion, finding that taken in context, the comment was not sufficiently prejudicial to warrant a mistrial. The trial court's offer to give a curative instruction was rejected, and the victim resumed her testimony after being cautioned not to make any further reference to Petitioner's criminal history. Petitioner asserts that the trial court erred in denying the motion for a mistrial.

When Petitioner presented this claim on direct appeal, the State argued that the claim was barred because it was not properly preserved by a contemporaneous objection at trial. The state district court entered a per curiam decision affirming Petitioner's conviction and sentence without written opinion (Dkt. 5, Ex. 005).

In the response to the instant petition, Respondent argues that this claim is barred from review in this Court because it was procedurally defaulted in state court, citing *Harmon v. Barton*, 894 F.2d 1268 (11th Cir.), *cert. denied*, 498 U.S. 832 (1990). Having thoroughly reviewed the record, the Court concludes, however, that there is a fundamental flaw in the petition that negates the need to discuss the state court's finding of procedural default. Here, the issue is exhaustion of the federal dimension of the claim, a statutory requirement that the State did not expressly waive in this case. See 28 U.S.C. 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."). *See also McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (holding that the district court erred in finding that because the state failed to argue the procedural bar, the bar was waived and proceeded to consider the merits of the petitioner's claim). As the briefs Petitioner filed on direct appeal confirm, this issue was raised on

direct appeal in state law terms only.³ The claim is, thus, not properly exhausted in state court. *See* 28 U.S.C. § 2254(b).

Citing *Duncan v. Henry*,⁴ Petitioner argues to the contrary, contending that he "alerted the [s]tate [c]ourt of the claim[']s federal nature through the substance of the claim itself." Petitioner's constrained reading of *Duncan* is unpersuasive. As the *Duncan* court held, clearly and unambiguously, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, *he must say so*, not only in federal court, but in state court." *Duncan v. Henry*, 513 U.S. at 365-366 (emphasis added). As clarified more recently in *Baldwin v. Reese*, a decision focusing upon the requirement that a petitioner for federal habeas relief "fairly present" his claims in state court, the United States Supreme Court held that ["a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" 541 U.S. 27, 32 (2004). Petitioner has failed to carry this burden.

While he did cite three federal cases and referenced the federal constitution in his appellate briefs in support of his argument that Florida's PRRPA is unconstitutional, *see* Dkt. 5 at 7; 21-22; 26; 31; 33, like Reese, Petitioner did not "fairly present" the federal dimension of his claim that the trial court erred in denying his motion for a mistrial to the

---

³As Petitioner correctly points out, Respondent mistakenly states that this claim is a "replica of the claim in Petitioner's motion for post conviction relief" (Dkt. 5 at 13). It is, however, as Respondent further contends, a "replica of the claim" raised by Petitioner on direct appeal. Respondent's misstatement of the record in this regard is of no consequence to the disposition of this claim.

⁴513 U.S. 364, 365-366 (1995).

-6-

state courts. The briefs he filed in the state district court on direct appeal did not indicate in any way that Petitioner was complaining that the trial court's denial of the motion for a mistrial was a violation of federal law. See Dkt. 5, Ex. 001 at 8-11. Further contradicted by the record is Petitioner's assertion, see Dkt. 6 at 3, that the argument presented in his state court brief on this issue referenced a "due process right to a fair trial," see Dkt. 5, Ex. 001 at 8-11.

Likewise, Petitioner's assertion that this claim is not procedurally barred because the State relied on federal law in its appellate brief to support its argument that his conviction and sentence should be affirmed is contradicted by the record. As the United States Supreme Court recently emphasized, "as a general matter, the burden is on the petitioner to raise his federal claim in the state courts at a time when state procedural law permits its consideration on the merits, even if the state court could have identified and addressed the federal question without its having been raised." Bell v. Cone, 543 U.S. 447, 451 n.3 (2005). The burden of "fairly presenting" the federal aspects of a petitioner's claim in state court cannot be shifted to the State. Contrary to Petitioner's assertion otherwise, the only reference to federal law in the State's brief on this claim was a citation to the Florida Supreme Court's decision in State v. DiGuilio[5] citing and adopting the federal harmless error standard enunciated in Chapman v. United States, 386 U.S. 18, 22 (1967), see Dkt. 5, Ex. 003 at 10-11. Cited in support of the State's argument that if the trial court erred in denying the motion for a mistrial, the error was harmless, the State's reference to DiGuilio does not serve Petitioner's cause. Id.

---

[5]491 So.2d 1129 (Fla. 1986) ("The harmless error test, as set forth in Chapman and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction").

The Court finds that Petitioner has failed to satisfy the requirement that he give the state court an "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) (citation omitted). *See also Engle v. Isaac*, 456 U.S. 107, 128-29 (1982) ("The state appellate courts [must have] a chance to mend their own fences and avoid federal intrusion.").

A petitioner's claims or portions of claims that are not exhausted but would clearly be barred if returned to state court must be dismissed. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). Here it would be futile to dismiss this case to give Petitioner the opportunity to exhaust his claim because it could have and should have been raised on direct appeal. *See* Fla. R. Crim. P. 3.850(c).[6] Because Petitioner did not present the federal dimension of his claim to the highest state court, it has not been exhausted and is now procedurally barred at the state level.

A federal court may still review the merits of Petitioner's claim despite the procedural bar if he can show both "cause for the default and prejudice attributable thereto" or that failure to address the claim on the merits would lead to a fundamental miscarriage of justice, often referred to as the "actual innocence" exception, *see Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). Cause must ordinarily be something external to the petitioner. *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show prejudice, Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152 (1982).

---

[6] Under Fla. R. Crim. P. 3.850(c), "grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal" are procedurally barred from collateral review.

Petitioner offers no reason for his failure to raise the federal nature of this claim on appeal, and the Court discerns none that would amount to good cause to overcome a state procedural default. Having failed to allege, much less show, that any factors external to the defense prevented the presentation of this claim, Petitioner has not shown cause to excuse the default. *See Murray v. Carrier,* 477 U.S. 478 (1986); *Wainwright v. Sykes,* 433 U.S. at 90.

The exception to the "cause-and-prejudice" requirement recognized in *Sykes* providing that the standard developed therein would not bar habeas relief for a victim of a "miscarriage of justice" is also unavailing to Petitioner's cause. *See id.* at 90. A petitioner in a collateral proceeding who wishes to establish his actual innocence to avoid a procedural bar to consideration of the merits of his underlying claim must demonstrate that "a *constitutional* violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo,* 513 U.S. 298, 327 (1995) (emphasis added). This gateway applies only if the petitioner can demonstrate that "more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell,* ___ U.S. ___, 126 S.Ct. 2064, 2076-77 (2006); *see also Bousley v. United States,* 523 U.S. 614, 623 (1998) (quoting *Schulp v. Delo,* 513 U.S. at 327-28).

In this context, Petitioner must show constitutional error coupled with newly discovered evidence that was not presented at trial that would establish factual innocence rather than mere legal insufficiency. *Id; Johnson v. Alabama,* 256 F.3d 1156, 1171 (11th Cir. 2001). *See also Schlup v. Delo,* 513 U.S. at 324. Petitioner does not assert that he has "new" reliable evidence of factual innocence and there is nothing in the record that suggests a miscarriage of justice will occur if the Court does not reach the merits of this claim. *See Murray v. Carrier,* 477 U.S. 478, 495-96 (1986).

Because Petitioner fails to proffer "specific facts which support a finding that one of these exceptions to the procedural default rule exists," *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), it would be improper for this Court to address the merits of this claim. *See Kight v. Singletary*, 50 F.3d 1539, 1541 (11th Cir. 1995).

**GROUND TWO**

In support of his ineffective assistance of counsel claim, Petitioner asserts that trial counsel failed to "investigate, develop and call" three witnesses "from the neighborhood where the alleged crime occurred" who would have provided exculpatory testimony that supported his version of the events that led to the victim's car being set afire.

To establish a prima facie claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance that is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)).

Because the ultimate resolution of ineffective assistance of counsel claims is a mixed question of law and fact, *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001); *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness mandated by § 2254(e)(1) does not apply to this determination. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). State court findings of historical

facts made in the course of evaluating an ineffectiveness claim are, however, subject to a presumption of correctness under 28 U.S.C. § 2254(e) unless the petitioner demonstrates by clear and convincing evidence that they are incorrect, see *Williams v. Taylor*, 529 U.S. at 412-413, a burden that Petitioner has failed to carry. See § 2254(e)(1).

Under Florida law, trial counsel's failure to call a witness constitutes ineffective assistance of counsel only if the witness may have been able to cast doubt on the defendant's guilt. *See Pace v. State*, 750 So.2d 57 (Fla. 2d DCA 1999); *Marrow v. State*, 715 So. 2d 1075, 1076 (Fla. 1st DCA 1998). In order to satisfy the prejudice requirement, a facially sufficient habeas petition alleging the ineffectiveness of counsel for failing to call certain witnesses must include an assertion that those witnesses would in fact have been available to testify at trial had trial counsel called them. *Nelson v. State*, 875 So.2d 579, 584 (Fla. 2004). Trial counsel is not ineffective for failing to locate an unidentified witness. *Jones v. State*, 528 So.2d 1171, 1174 (Fla. 1988).

In Florida courts, "failure of counsel to call witnesses on behalf of the defense is a matter of personal judgment exercised by defense counsel and is not a ground of collateral attack." *Fuller v. Wainwright*, 238 So.2d 65, 66 (1970). Likewise, in federal court, "complaints of uncalled witnesses are not favored[ ] because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978).[7]

As set forth below, in rejecting Petitioner's claim on the merits, the trial court applied the *Strickland* standard of review for ineffective assistance of counsel claims, 466 U.S. at

---

[7]Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

687. Thus, to establish that he is entitled to relief on this claim, Petitioner must establish that the trial court incorrectly applied the *Strickland* standard in reaching its determination that the claim lacks merit. *See Parker v. Sec. for Dep't of Corrs.*, 331 F.3d 764, 766 (11th Cir. 2003), *cert. denied*, 540 U.S. 1222 (2004).

Petitioner contends that prior to trial, he "mentioned" to trial counsel that Lord Whity,[8] his wife, Daisy Whity, and Mrs. Ruby Hagen, Petitioner's mother, would have provided testimony that, when considered in light of testimony he could give regarding the incident, would "convince" the jury "that the accidental theory of defense was not only plausible but probable as well," resulting in his acquittal "of second degree arson, or in the least, cast reasonable doubt" (Dkt. 1 at 5a-5b). During the Rule 3.850 hearing, Petitioner testified that following the trial, Mrs. Whity and Mrs. Hagen told him that trial counsel never contacted them regarding his case.

When Petitioner presented this claim in his Rule 3.850 motion he incorporated by reference facts proffered in support of a claim that he was denied his Fifth and Sixth Amendment right to testify on his own behalf[9] (Dkt. 5, Ex. 006 at R. 65). While Petitioner has not raised that claim in the instant petition, because Petitioner asserts that the testimony Mrs. Hagen and Mrs. Whity would have given if called to testify would corroborate testimony he would have given had he taken the witness stand, a review of the

---

[8]During the Rule 3.850 evidentiary hearing, Petitioner testified that he was informed by Hilliard Hawkins, a former classmate incarcerated in the Polk County Jail while Petitioner was awaiting trial, that Hawkins's sister, Daisy Whity, told him that she and her husband, Lord Whity, were sitting outside their home when the victim's car caught fire (Dkt. 5, Ex. 006 at R. 158). According to Petitioner, Mr. Hawkins stated that Mrs. Whity told him that from where she and her husband were seated, they could see "the tip of the driveway" where the car was parked. By the time Petitioner proceeded to trial, Lord Whity was deceased.

[9]The theory of Petitioner's defense was that he ignited the fire accidentally. Having represented Petitioner in several other criminal matters, trial counsel advised against Petitioner testifying at trial because he did not want the jury to learn of Petitioner's extensive criminal history. Petitioner took trial counsel's advice and waived his right to testify.

testimony Petitioner proffered in the Rule 3.850 proceedings to support the claim that he was denied the right to testify on his own behalf is relevant to the discussion of his allegation that trial counsel was ineffective for not calling Mrs. Hagen and Mrs. Whity to testify.

In his Rule 3.850 motion, Petitioner asserted that had he taken the witness stand, he would have explained to the jury that having spent the past three days drinking and "doing crack cocaine," he was not thinking clearly the day he set the victim's car afire. According to Petitioner, he became angry with the victim because she refused to drive him to a "pretrial" proceeding that morning and decided to teach her a lesson by *pretending* that he was going to burn her car. When he approached the car with a container of gasoline, the victim attempted to stop him. Petitioner reached inside the car to shift the transmission into neutral while keeping up the pretense that he were going to douse the car with gasoline. In support of the theory of his defense that the fire was ignited accidentally, Petitioner proffered the following:

> [The victim] grabbed at Petitioner, causing the gas to spill onto him. At the same time the gas went into the car but [Petitioner] was not aware of that as the container ended up on the ground and [Petitioner] was mad about the gas getting on him and stomped in anger to the front of the car. [The victim] followed [Petitioner] trying to calm him down.
>
> While standing in front of the car, [Petitioner], who was hyper from the effects of his crack binge, mad at himself for his prank not seeming to effect [sic] [the victim] the way he thought, and angry about the gas getting on him, reached in his pocket, took a cigarette out and lit it trying to rethink everything. When he lit the cigarette his body caught on fire and he panicked; looking for something to put the fire out.
>
> At this point, [Petitioner] ran to the driver[']s side of the car, knowing a towel was in it and started to reach in to grab it and put his fire out. . . When [Petitioner] reached into the car it blew up, knocking [Petitioner] to his knees and further setting his neck and sleeve on fire.
>
> . . . .

-13-

> At no time did [Petitioner] intend to actually set the car on fire but rather to just scare [the victim] into seeing his side of the story. The prank was stupid, childish and a very bad choice that was not thought through due to his drug induced state and his anxiety over [the victim] not wanting to take him to what was a very serious and important appointment.

Dkt. 5, Ex. 006 at R. 69-70.

According to Petitioner, had trial counsel called Mrs. Whity to testify, she would have corroborated his testimony with the following:

> 1) That Daniels and [the victim] were arguing. 2) That Daniels pushed the car out into the road. 3) That both Daniels and [the victim] then went in front of the car and continued to converse. 4) Daniels struck something, caught on fire and stumbled back while on fire. 5) While on fire [Daniels] went by the driver's side door at which time the car blew up. Daniels then got up, ran across the street and rolled in the sand to put the fire out.

Dkt. 1 at 5a. Petitioner's credibility would have been further bolstered by Mrs. Hagen's testimony:

> 1) That Daniels was in front of the car. 2) That Daniels was on fire. 3) Daniels then ran past the car and it blew up and then Daniels disappeared.

*Id.* The testimony of these two witnesses would have corroborated testimony Petitioner would have given that the fire was an accident that occurred while he was "panicking and running beside the car, where, no doubt, gas fumes had started to build up, . . . consistent with the state's witnesses' testimony that [Petitioner] was beside the driver's side window when the car burst into flames" (Dkt. 1 at 5a). As during the Rule 3.850 proceedings, Petitioner does not present any actual testimony by deposition, affidavit, or otherwise from either of these two witnesses in support of this claim.[10]

---

[10] Although post-conviction counsel advised the trial court during the Rule 3.850 evidentiary hearing that if necessary, Petitioner would present testimony by the prospective witnesses in support of this claim, as discussed above, Lord Whity died before Petitioner proceeded to trial, and Petitioner's mother was diagnosed with Alzheimer's Disease approximately three months before the evidentiary hearing was held, rendering her incompetent to provide testimony on Petitioner's behalf. Petitioner also acknowledged during the hearing that he had not spoken to Mrs. Whity since shortly after his conviction, and he did not have an address at which
(continued...)

-14-

In rejecting this claim, the trial court found:

> In Ground Three, the Defendant claims counsel was ineffective for failing to call witnesses. Specifically, the Defendant alleges that he provided the names, addresses, and the nature of the testimony of four additional witnesses to his court-appointed attorney, Ted Lasseigne. The Defendant claims that had Mr. Lasseigne called these witnesses, the outcome of his trial would have been different.
>
> Mr. Lasseigne, however, testified at the evidentiary hearing that throughout multiple personal conferences, telephone conversations, and numerous correspondence, the Defendant never mentioned that he had additional witnesses for Mr. Lasseigne to depose and call at trial (Time sheet, attached). Although the Defendant testified that he informed Mr. Lasseigne of these witnesses, the Court finds Mr. Lasseigne's testimony more credible and accepts Mr. Lasseigne's testimony as true and convincing. Mr. Lasseigne cannot be found to have been ineffective for failing to call witnesses that were not disclosed to him and could not have been found with due diligence. As such, the Defendant has failed to satisfy the first prong of *Strickland* and is not entitled to relief.
>
> Assuming *arguendo* that the Defendant had satisfied the first prong of *Strickland*, there is not a reasonable probability that the outcome of the trial would have been different. Although the Defendant alleged that there were four additional witnesses that could have testified at his original trial, only one of those witnesses (Daisy White)[11] would be able to testify at a new trial. Even if Daisy White was to testify to a different sequence of events than the other four eyewitnesses who testified at the original trial, the Defendant testified at the evidentiary hearing that the vantage point of Daisy White was one where she could not see the events taking place, but only hear the events that led to the Defendant's conviction. The Defendant has failed to meet the second prong of *Strickland* as well, and he is not entitled to relief.

Dkt. 5, Ex. 006 at R. 222-23 (footnote added).

Having had the benefit of hearing testimony from trial counsel and Petitioner and an opportunity to observe their demeanor on the witness stand, the trial court determined that trial counsel was the more credible witness, concluding that Petitioner never informed trial

---

[10](...continued)
he could contact her.

[11] In his Rule 3.850 motion and the instant petition, Petitioner refers to "Doris Whity." This discrepancy is of no consequence to the resolution of Petitioner's claim.

-15-

counsel that there were additional witnesses to the fire. The transcript of the Rule 3.850 evidentiary hearing supports the trial court's findings.

Determinations of witness credibility are best made by the trial court judge, who can assess the demeanor and candor of the witnesses. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Baldwin v. Johnson*, 152 F.3d 1304, 1317 (11th Cir. 1998) (citing *Smith v. Kemp*, 715 F.2d 1459, 1465 (11th Cir.) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing."), *cert. denied*, 464 U.S. 1003 (1983)); *Porter v. State*, 788 So.2d 917, 923 (Fla. 2001) (recognizing the trial court's "superior vantage point in assessing the credibility of witnesses and in making findings of fact"). As the 70-page transcript of the Rule 3.850 evidentiary hearing confirms, represented by court-appointed counsel, Petitioner was afforded a full and fair opportunity to present evidence and testimony in support of his claim (Dkt. 11, Ex. 006).

Under Florida law, trial counsel's failure to call a witness constitutes ineffective assistance of counsel only if the witness may have been able to cast doubt on the defendant's guilt. *See Pace v. State*, 750 So.2d 57 (Fla. 2d DCA 1999); *Marrow v. State*, 715 So. 2d 1075, 1076 (Fla. 1st DCA 1998). A facially sufficient habeas petition alleging the ineffectiveness of counsel for failing to call certain witnesses must include an assertion that those witnesses would in fact have been available to testify at trial had trial counsel called them. *Nelson v. State*, 875 So.2d 579, 584 (Fla. 2004). Further, trial counsel is not ineffective for failing to locate an unidentified witness. *Jones v. State*, 528 So.2d 1171, 1174 (Fla. 1988).

The performance prong of *Strickland* focuses on whether counsel's performance was reasonable "under prevailing professional norms." *Strickland*, 466 U.S. at 688; *Jones*

*v. State*, 845 So.2d 55, 65 (Fla. 2003) ("[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness" based on "prevailing professional norms.") (quoting *Ragsdale v. State,* 798 So.2d 713, 715 (Fla. 2001)). In evaluating counsel's performance, a court should presume effectiveness and avoid second guessing with the benefit of hindsight. *Strickland*, 466 U.S. at 689; *see also White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992), *cert. denied*, 514 U.S. 1131 (1995); *Cherry v. State*, 659 So.2d 1069, 1073 (Fla. 1995). The Constitution does not guarantee errorless counsel. *See Lovett v. State of Fla.*, 627 F.2d 706, 708 (5th Cir. 1980); *Herring v. Estelle*, 491 F.2d 125, 127 (5th Cir. 1974).

"[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted). In other words, to successfully assert that trial counsel should have called a witness, a petitioner must first make a sufficient factual showing substantiating the proposed witness testimony. *United States v. Schaflander*, 743 F.2d 714, 721 (9th Cir. 1984). Such evidence might be sworn affidavits or depositions from the potential witnesses stating to what they would have testified. In the absence of the necessary factual showing, Petitioner's mere conclusory allegations are insufficient to warrant finding that trial counsel was ineffective for failing to call these witnesses to testify. *Id.* Self-serving speculation will not sustain a claim of ineffective assistance of counsel. It is well-established that "[a]n applicant for post-conviction relief on the basis of ineffective assistance of counsel must plead facts showing both a constitutionally deficient performance on counsel's part and resulting prejudice to satisfy the *Strickland* test." *Tejada v. Dugger*, 941 F.2d 1551, 1559

(11th Cir. 1991) (citation omitted). To secure a hearing on his claims, a habeas petitioner must allege facts, which, if true, would entitle him to habeas relief. *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir.1990) (en banc).

"Defense counsel's failure to call certain witnesses is not sufficient grounds for a Sixth Amendment claim." *United States v. Hughes*, 635 F.2d 449, 453 (5th Cir. 1981) (citing *Buckelew v. United States*, 575 F.2d at 521. Because trial counsel's decision about what witnesses to call in support of his client's defense requires a balancing of the benefits and risks of the anticipated testimony, it is generally considered a matter of trial strategy. As the Eleventh Circuit noted in *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir.1994), *cert. denied*, 513 U.S. 1115 (1995), the United States Supreme Court has mandated a highly deferential review of counsel's conduct, especially where strategy is involved. *Strickland*, 466 U.S. at 690; *Chandler v. United States*, 218 F.3d 1305, 1314 n.14 (11th Cir. 2000) (en banc). *See also Wright v. State*, 581 So.2d 882, 883-84 (Fla.1991) (holding that a strategic decision regarding whether or not to use defense witnesses is a tactical decision). "The witness may not testify as anticipated, or the witness's demeanor or character may impress the jury unfavorably and taint its perception of the accused; or the testimony, though sympathetic, may prompt jurors to draw inferences unfavorable to the accused." *Lema v. United States*, 987 F.2d 48, 54 (1st Cir. 1993) (citations omitted). Petitioner has failed to advance a persuasive argument that trial counsel's decision not to call Mrs. Whity or Mrs. Hagen was unreasonable or that this decision can be construed as conduct outside the wide range of professional representation.

Petitioner has failed to overcome the strong presumption accorded the trial court's factual findings, *see* 28 U.S.C. 2254(e)(1), or demonstrate that trial counsel failed to

exercise reasonable professional judgment. *See Grayson v. Thompson*, 257 F.3d 1194 1218 (11th Cir.2001). A state prisoner seeking habeas relief in a federal court carries the burden of establishing that the state court's resolution of his claim was contrary to, or an unreasonable application, of federal law. Petitioner has not met this burden. The Court finds, therefore, that Petitioner is not entitled to the relief he seeks on this claim.

## Conclusion

For the foregoing reasons, the Court determines that Petitioner has not met the criteria for relief under 28 U.S.C. § 2254.

ACCORDINGLY, the Court **ORDERS** that:

1. The petition for writ of habeas corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**ORDERED** in Tampa, Florida, on September 12th, 2006.

JAMES D. WHITTEMORE
UNITED STATES DISTRICT JUDGE

SA:jsh
Copy to: All Parties of Record